IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CATHERINE REEVES FERACI,
    Petitioner,

vs.                                          Case No.: 3:13cv15/MCR/EMT

FLORIDA DEPARTMENT
OF CORRECTIONS,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

        This cause is before the court on Petitioner's amended petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (doc. 4). Respondent filed an answer and relevant portions of the state court record (doc. 17). The court provided Petitioner an opportunity to file a reply (*see* doc. 19), but as of the date of this Report and Recommendation, she has not done so.

        The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

        The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 17).[1] Petitioner was charged in the Circuit Court in and for Santa Rosa

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

County, Florida, Case No. 2008-CF-0418, with one count of felony petit theft (Ex. C at 1). On August 31, 2009, Petitioner entered a written plea agreement with the State, pursuant to which she agreed to enter a no contest plea "straight up" to the charge, with no agreement with the State regarding Petitioner's sentence (*id.* at 17–19). The court accepted Petitioner's plea (Ex. D) and sentenced her on October 28, 2009, to a term of five (5) years, seven (7) months, and fifteen (15) days (67.5 months) of imprisonment (Ex. C at 23–27, 78–98).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-6015 (Ex. B, Ex. C at 101). She subsequently filed a notice of voluntarily dismissal (Exs. E, F). The First DCA dismissed the appeal on April 23, 2010 (Ex. G).

On April 1, 2010, while the appeal was pending, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure, arguing that her sentence was illegal because it exceeded the statutory maximum (Ex. I). The state circuit court denied the motion on June 3, 2010, on the ground that Florida Statutes § 3.704(d)(25) required the court to impose the lowest permissible sentence under the Criminal Punishment Code ("CPC"), even if that sentence exceeded the statutory maximum (*id.*).

On or about May 19, 2010, Petitioner filed a letter requesting modification of her sentence (Ex. J). The state circuit court construed the letter as a motion under Rule 3.800(c) of the Florida Rules of Criminal Procedure, and denied it in an order rendered June 7, 2010 (*id.*).

On July 12, 2010, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M at 1–18). Petitioner retained counsel, and counsel amended the Rule 3.850 motion to add two additional grounds (*id.* at 21, 24–28). The state circuit court granted a limited evidentiary hearing, which was held on February 20, 2012 (*see id.* at 104–05, 111–91). The court subsequently denied the Rule 3.850 motion (*id.* at 192–99). Petitioner appealed the decision to the First DCA, Case No. 1D12-2413 (Ex. N). The First DCA affirmed the judgment per curiam without written opinion on December 7, 2012, with the mandate issuing January 3, 2013 (Exs. P, Q). Feraci v. State, 103 So. 3d 147 (Fla. 1st DCA 2012) (Table).

On April 11, 2012, Petitioner filed another Rule 3.800(a) motion (Ex. R). The state circuit court denied the motion in an order rendered July 13, 2012 (Ex. S).

On July 24, 2012, Petitioner filed another Rule 3.850 motion (Ex. T). In an order rendered February 1, 2013, the state circuit court granted the motion and set her case for resentencing (Ex. V). On February 22, 2013, Petitioner was resentenced to sixty-six (66) months and eleven (11) days of imprisonment (Ex. W).

On or about April 19, 2013, Petitioner filed another letter requesting modification of her sentence (Ex. X). The state circuit court construed the letter as a Rule 3.800(c) motion, and denied it in an order rendered May 3, 2013 (Ex. Y).

Petitioner filed the instant federal habeas action on January 7, 2013 (doc. 1 at 7).

II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. See Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court

conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless she demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that she is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

<u>Ground One: "Violation of 6th Amendment right to effective assistance of counsel for misadvice concerning the rejection of a plea offer."</u>

<u>Ground Two: "Violation of 6th Amendment right to effective assistance of counsel for failure to advise client that she could withdraw her plea."</u>

In Ground One, Petitioner contends her trial counsel, Mr. Etheridge, was ineffective for advising her to reject a 24-month plea offer because she would receive a downward departure sentence of no prison time if she entered a "straight up" plea to the court (doc. 4 at 4, supporting memorandum at 5–8). Petitioner states the attorney she first retained, Mr. Griffith, informed her of the State's 24-month plea offer and advised her to accept it (*id.*). She states she consulted Mr. Etheridge, who advised her the offer was a "raw deal," and he could "get a better deal" (*id.*). She states based upon this advice, she fired Mr. Griffith and hired Mr. Etheridge (*id.*). Petitioner states she entered a straight up plea based upon Mr. Etheridge's promise that she would receive a non-

prison sentence and, but for this erroneous advice, she would have accepted the State's 24-month plea offer (doc. 4, supporting memorandum at 9–11).

In Ground Two, Petitioner contends her plea was involuntary, because Mr. Etheridge failed to advise her she could withdraw her plea on the ground that after she entered the plea, her sentence computation under the CPC changed (doc. 4 at 4, supporting memorandum at 8–11). She alleges at the time she entered her plea, on August 31, 2009, her maximum sentence exposure was sixty (60) months of imprisonment, but when she was sentenced on October 28, 2009, a new CPC score sheet was presented to the court, which calculated her lowest permissible sentence as 67.5 months (*id.*). She contends Mr. Etheridge failed to advise her that the change in her sentence exposure constituted grounds to withdraw her plea (*id.*). She alleges if she had known this, she would have withdrawn her plea and proceeded to trial (*id.*).

Respondent contends the state court's adjudication of Petitioner's claims was not contrary to or an unreasonable application of clearly established federal law (doc. 17 at 13–20).

    1.    Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. The two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel

owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S.356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

    2.   Federal Review of State Court Decision

Petitioner presented these claims as Grounds One, Two, and Three in her Rule 3.850 motion (Ex. M at 3–5, 24–25). The state circuit court analyzed the claims under <u>Strickland</u>'s two-pronged standard (*id.* at 192–93). The court adjudicated the claims as follows:

**GROUND ONE**

>Defendant claims counsel was ineffective for advising her to reject the State's plea offer of 24 months incarceration. Many of Defendant's allegations within this claim are not clearly pled or are conclusory and are insufficient to support a claim of ineffectiveness. However, within this ground Defendant alleges counsel told her she would not receive any prison time at all. At the evidentiary hearing on this claim, counsel testified Defendant rejected the State's plea because she did not want any time at all, and he explained to Defendant they would enter an open plea and try for a downward departure in order to avoid prison time. (Exhibit B, p. 34–35.) Although counsel believed 24 months prison for the theft of two shirts was not a fair sentence, he never promised or otherwise guaranteed a downward departure of no incarceration would be granted. (Exhibit B, pp. 37, 42.) He went over the scoresheet, lowest permissible sentence, prior offenses, and the plea agreement with her before the plea. (Exhibit B, pp. 36, 38, 40–45.) Counsel's testimony in this regard was forthright and credible. In contrast, Defendant testified at the evidentiary hearing that counsel did not go over the plea agreement with her and she did not have a chance to read it; whereas Defendant testified at the plea hearing she had gone over the agreement with her counsel and did not have any questions for him. (Exhibit B, p. 12; Exhibit C, p. 7.) Based on the totality of the circumstances and evidence, counsel's testimony is more credible than Defendant's as to her allegation that he told her she would not receive any prison time and refutes her claim of ineffectiveness.

**GROUND TWO**

>In Ground Two Defendant alleges at the time she entered her plea, her lowest permissible guidelines sentence was 57 months, but at the sentencing hearing it had been revised to 67.5 months. Defendant claims she would not have entered her plea if she had known of the revised sentencing guidelines, and counsel was ineffective for failing to advise her she could withdraw her plea.[FN2] This claim was heard in the evidentiary hearing.
>
>>[FN2: Defendant also attempts to claim counsel misadvised her as to her correct sentencing range. This claim is insufficient as set forth in the Court's ruling on Ground Three herein.]

Prior to entering her plea, Defendant was informed she faced a possible minimum sentence of 57 months and maximum of five years. (Exhibit B, pp. 10, 56.) At the plea hearing, it was discussed that the scoresheet showed her lowest permissible sentence to be 57 months. (Exhibit C, p. 4.) Defendant also signed a plea agreement that showed her maximum statutory sentence to be five years. (Exhibit D.) Defendant testified at the plea hearing she had gone over the agreement with her counsel and did not have any questions for him. (Exhibit C, p. 7.) It was not until after the plea hearing and after preparation of the presentence investigation report that the State and counsel learned of the amended sentencing range of 67.5 months, to which counsel stipulated at sentencing. (Exhibit B, p. 39; Exhibit A, pp. 2–3, 5.)

Regardless, Defendant was informed prior to entering her plea she faced a possible sentence significantly longer than the 24 month offer she rejected. There is no reasonable probability that she would have sought to withdraw her plea and proceed to trial upon learning of a possible sentence of 67.5 months. She was represented by different counsel at the time she first learned of the plea, who recommended she accept the plea offer. (Exhibit B, pp. 6, 14.) Instead, Defendant sought other counsel and rejected the plea offer. (Exhibit B, pp. 14–15, 34, 42.) In addition to her medical issues, Defendant has two children ages [sic] 7 and 17 at the time, and did not want to serve any time of incarceration. (Exhibit B, pp. 35, 36, 41, 64; Exhibit A, p. 12.)

**GROUND THREE**

Defendant claims trial counsel Randall Etheridge was per se ineffective for failing to be present at her plea hearing, sending substitute counsel instead. She alleges she entered the plea with the understanding she faced a lowest permissible sentence of 57 months and a maximum sentence of 67.5 months. Defendant also claims Ronald Davis, who appeared with her at the plea hearing on Mr. Etheridge's behalf, was ineffective for failing to provide her with the information she needed before entering her plea.

Defendant's claim of per se ineffectiveness is without merit, as Defendant was not without counsel at the plea hearing. *See Crain v. State*, 78 So. 3d 1025, 1042 (Fla. 2011). As to the actual ineffectiveness of either attorney, the claim is otherwise insufficiently pled. Defendant does not state she would not have entered her plea but for Mr. Etheridge's failure to attend the plea hearing or if Mr. Davis had correctly informed her of the 67.5 month sentencing range. *See Rankin v. State*, 861 So. 2d 1222, 1224 (Fla. 2d DCA 2003). She also does not allege either attorney knew or should have known of the correct sentencing range.

> Defendant also claims her plea was not voluntary because the maximum penalty discussed at the plea stage was not the same as that at sentencing. Defendant fails to state within this claim that she would not have entered her plea had she known of the amended sentencing range, and thus the claim is insufficiently pled. Moreover, as stated above, there is not a reasonable probability Defendant would not have entered her plea had she known of the 67.5 months at the sentencing stage.

(Ex. M at 193–96). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. P).

As set forth in the state court's order, the court found as fact that Mr. Etheridge's testimony was more credible than Petitioner's regarding her allegation that Mr. Etheridge told her she would not receive any prison time if she rejected the 24-month offer and pled straight up to the court. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."). Questions of the credibility and demeanor of a witness are questions of fact. *See* Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)). The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e).

Petitioner has not shown by clear and convincing evidence that the state court's credibility determination was unreasonable. Mr. Etheridge testified at the evidentiary hearing that Petitioner rejected the State's plea offer because she did not want any time at all in prison, and he explained to Petitioner that the only way she could ever receive a more favorable sentence than 24 months would be to enter a straight up plea and argue for a downward departure (Ex. M at 144–45, 147, 152, 154, 159, 166, 173). Mr. Etheridge also testified that although he believed that 24 months in prison for the theft of two shirts was not a fair sentence, he never promised or otherwise guaranteed that the court would impose a downward departure sentence of no incarceration (*id.* at 147–48, 152–53, 166).
In light of the state court's determination that Mr. Etheridge did not promise or otherwise advise Petitioner she would not receive any prison time if she rejected the 24-month offer and pled "straight up" to the court, this federal court cannot say that the state court's rejection of Ground One was an unreasonable application of Strickland.

In Ground Two, Petitioner alleges Mr. Etheridge failed to advise her that the change in her sentence exposure from 57–60 months to 67.5 months constituted grounds to withdraw her plea, and if she had known this information, she would have withdrawn her plea and proceeded to trial. The state court found as fact that (1) Petitioner was informed prior to entering her plea that she faced a possible sentence significantly longer than the 24-month offer she rejected, and (2) at the time she entered her plea, she did not want to serve any term of incarceration due to her medical issues and the fact that she had two children, aged 7 and 17.

Petitioner has not shown by clear and convincing evidence that the state court's factual findings were unreasonable. At the state evidentiary hearing, Petitioner testified that at the time of her plea, she understood that her lowest permissible sentence was 57 months of incarceration, and her maximum possible sentence was 60 months (Ex. M at 120–21).[3] She testified that at sentencing, the State presented Mr. Etheridge with a new CPC score sheet, which reflected a lowest permissible sentence of 67.5 months (*id.* at 121). Petitioner admitted that her prior criminal record, upon which

---

[3] The written plea agreement signed by Petitioner stated a maximum sentence of 60 months (Ex. C at 17), and the prosecutor announced at the plea hearing that Petitioner's initial CPC score sheet indicated a lowest permissible prison sentence of 57 months (Ex. D at 4).

Case No.: 3:13cv15/MCR/EMT

the increase in her sentence computation was based, was accurately reflected in the modified CPC scoresheet (*id.* at 125–26, *see also* Ex. C at 20–22).

Mr. Etheridge testified at the evidentiary hearing that during his first meeting with Petitioner, she stated she did not want to accept a plea offer involving any prison time, because she had two children (Ex. M at 145). He testified he advised her that the only way she could "do better" than 24 months in prison was to enter a plea to the court and argue for a downward departure sentence based upon grounds that she had several medical problems, the crime was committed in an unsophisticated manner, it was an isolated incident, she was very remorseful, and she aided the State by pleading guilty and forgoing a trial (*id.* at 144–46). Mr. Etheridge testified that after Petitioner entered her plea, the State conducted a pre-sentence investigation and discovered additional past crimes, which resulted in a modified sentence computation of 67.5 months (*id.* at 149). He testified he discussed the modified CPC score sheet with Petitioner at the sentencing hearing, and she admitted the accuracy of her criminal history as stated in the modified CPC score sheet (*id.* at 148–49, 155). Mr. Etheridge testified, and Petitioner admitted, that upon learning the modified sentence calculation, Petitioner did not indicate she did not want to proceed with sentencing (*id.* at 137, 149). Mr. Etheridge testified that Petitioner wished to argue for a downward departure sentence regardless of the change in her sentence computation (*id.* at 173–74).

The transcript of the sentencing hearing reflects that when the hearing commenced, Mr. Etheridge announced that at the time of the plea, Petitioner's lowest permissible prison sentence was 57 months, but after the pre-sentence investigation, her lowest permissible prison sentence increased to 67.5 months (Ex. C at 79–80). Mr. Etheridge announced that Petitioner did not contest the accuracy of the calculation, and that they wished to proceed to sentencing (*id.* at 80). Petitioner testified at sentencing regarding her medical issues (*id.* at 83–85). She also admitted that her criminal history as indicated in the CPC scoresheet was accurate (*id.* at 85). During her testimony, Petitioner had the opportunity to notify the court that the change in her sentence computation affected her desire to proceed with sentencing, but she admittedly gave no such indication either to the court or Mr. Etheridge.

Upon consideration of the record, this court cannot say that the state court's conclusion—that there is no reasonable probability that the outcome of the plea process was affected by counsel's

failure to advise Petitioner that she could withdraw her plea based upon the post-plea increase in her lowest permissible and maximum sentence under the CPC—was contrary to or an unreasonable application of Strickland. It was not unreasonable for the court to conclude there was no reasonable probability Petitioner would have withdrawn her plea (thereby abandoning any chance of a non-incarcerative downward departure sentence if she was convicted) and proceeded to trial upon learning she could receive a sentence of 67.5 months instead of 57–60 months.[4] Therefore, Petitioner failed to demonstrate she is entitled to federal habeas relief.

IV.  CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.  That the amended petition for writ of habeas corpus (doc. 4) be **DENIED**.

---

[4] Petitioner never professed she was innocent of the charge; indeed, she admitted in the written plea agreement that she stole items from Beall's Department Store on January 24, 2008, after having been previously convicted of petit theft on June 28, 1994, and August 20, 2007 (Ex. C at 17). Further, there is no evidence the State would have re-offered the 24-month plea deal if Petitioner had withdrawn her plea. At the plea hearing, the prosecutor announced that if Petitioner chose to enter a straight-up plea on that day, the State would request the lowest permissible sentence under the CPC (Ex. D at 4).

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 31st day of December 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**